The last case call for oral argument is Sharpe v. Westmoreland. Counsel, whenever you're ready, may proceed. Thank you, Your Honor. May it please the Court, opposing counsel, my name is Barbara Sharpe and I represent the respondent, Crystal Westmoreland, who is the mother of the minor child. This case is here on two questions which have been certified for appeal. But we really need you to answer the same question, and that is whether under the IMDMA a step-parent, as it is defined as being a married person, would also cover somebody such as Chris Folkerson, the appellee herein, who is not married to the father but was in a civil union with this father. This case is not a case about the Civil Union Act. It's not a case about the civil union partner, Chris Folkerson's, civil rights, although the briefs indicate they are trying to frame it as such. If anything, it would be possibly a case about my client, the mother's civil rights. What it's really about is the Illinois Marriage and Dissolution of Marriage Act and how this Court is going to interpret step-parent and whether this Court is going to ascribe legislative intent beyond the description and the definition of a step-parent as being somebody who is married to the parent of a child immediately preceding their death. Ms. Scheer, I want to make sure, because you've already mentioned it in your opening comments, under the jurisdiction section, which is 601.2, there are two different ways an allocation of parental responsibilities can be commenced in the Court. One is by a person other than a parent. Yes, Your Honor. Subsection 3. Right? But 4 is by a step-parent. Yes, Your Honor. And then there are very specific requirements under that section that all must be met. Absolutely. So are we proceeding as the step-parent under this Marriage and Dissolution Act section? Well, Ms. Fulkerson, it was pled that way. I'm not sure if I'm answering. That's why I want to make sure that we go ahead. Okay, I apologize. I did not mean to interrupt you. No, no. I want to know. It was pled that she had the standing requirement as a step-parent. Under subsection 3, I believe it's as a non-parent can ask for parental allocation if they have custody of the child at the time of the filing of the pleading. Is that the section you're referring to? Where the child is permitted only if he or she is not in a physical custody of one of his or her parents. Right, right. Right. And that's not. I mean, right. It is not pled under that section, so I don't believe that we're addressing it under that section, Your Honor. Well, I'm not. I don't think you can under the circumstances. No, you can't. My understanding is that we are addressing this in terms of whether or not Chris Fulkerson, the civil union partner, has standing as a step-parent under 601.2B4. Okay, and I would just note for your purposes in your brief. Your Honor. You've switched some numbers. You led 609.2, but it's really 602.9. That's my mistake, and I apologize. Thank you for catching it. I just want you to note that for the record that your brief has. I know which ones you're talking about. You're talking about 602, but it's not in that. My bad. I apologize, but thank you. Your Honor. Okay. You mentioned subsection B4 and the specific things that need to be proven even once we get past the standing, but I don't think we need to get to whether or not Liz Fulkerson or Matt Sharp has the majority of parenting time, whether it's in the best interest and whether it satisfies the wishes of the child or the child wishes to live with the step-parent or it's in their best interest. We don't even get there because Chris Fulkerson doesn't have standing. She's not a step-parent. The INDMA's definition of step-parent does not include somebody who is in a civil union. Most notably, we're here. This was a case that was. Let me ask you this. Yes, Your Honor. The language, the Supreme Court has said in numerous recent opinions that you start with the language of the statute. Thank you. And you don't go beyond that. The language of the Civil Union Act basically says that civil union partners obtain both benefits and the obligations of spouses as if they have been married. That's essentially what that language says. I know. That would include step-parenting, wouldn't it? No. The status of step-parenting. Why not? What in the language of the statute indicates that that would not be the case? Your Honor, the statute we're here to interpret is the Illinois Marriage and Dissolution of Marriage Act. This is a case that was brought in family court in Madison County. This is about the INDMA, not the Civil Union Act. And I agree with you that you're supposed to have a strict statutory interpretation within the language of the statute, that it's not my job, and with all due respect, it's not this Court's job to ascribe legislative intent. We have a line of Illinois Supreme Court cases. We have Hewitt. We have Blumenthal. Yes, those cases were about property rights of unmarried partners and people who were not in civil unions at the time. And the Illinois Supreme Court in that case specifically said we're not going beyond the language of the statute. You weren't married. You don't get to proceed under the Illinois Marriage and Dissolution of Marriage Act to get your property share. Going back to your question specifically about the Civil Union Act, the Civil Union Act, the language that you cited, has to do with the rights of civil union partners relative to one another. If you were to have your law firm pull up the Civil Union Act and put in searches for terms like child, children, minor, and parents, the only time you're going to find those terms mentioned in the Civil Union Act is, I believe, that parent or parents is mentioned within it several times when it talks about how to register for a Civil Union Act, that you need to disclose your parents' names and addresses. There's nothing in the Civil Union Act that indicates it's going to extend to children. The Illinois Marriage and Dissolution of Marriage Act, which has been through, as you know, multiple revisions, we have 15, we have 16, we have July of 17, we have January of 18. I mean, we all know what's going to happen in 19, not to mention what's going to go on with, well, I actually have no idea what's going to go on, but they need to do something because the tax code is changing relative to maintenance. With all of the revisions that the IMDMA has gone through, and these are revisions that are after the Civil Union Act. The Civil Union Act was in 2011. Same-sex marriage was legalized in 2014. And just to put this chronology in perspective, Chris Fulkerson and Matt Sharp entered into their civil union late in 2013. And I might also add, at the time they entered into a civil union, there was no legal impediment to them actually being married. One was a man, one was a woman. They could have been married. It is absolutely their choice not to be married. Nobody is suggesting that they have to be married. I mean, I understand that for a variety of reasons, political, religious, psychological, whatever, freedom of choice. You don't want to be married. You want to be in the civil union. That's fine. But just because you decide to do that doesn't mean you get every single right that other people have when you don't avail yourself of being married. My point being, I apologize, I got off track here, the revisions to the IMDMA occurred after the Civil Union Act. It's a hard sell for me to believe that the legislators who were revising the IMDMA didn't consider the Civil Union Act. And, in fact, we know that they did because there were specific mentions within the IMDMA about specific instances where a civil union is covered. None of those instances have to do with rights of civil union partners vis-a-vis one another, such as property rights or maintenance. The times within the Illinois Marriage and Dissolution of Marriage Act where civil unions are specifically mentioned in the revisions have to do with child support and when the Parentage Act was modified in 2015. Essentially, children who are born of two parties to a civil union during the civil union are essentially legitimized so you don't defile a parentage action, much like if you're married to somebody and you have a child, it's presumed to be a child of the marriage. The same would be with civil unions. But in other portions of the IMDMA that have to do with children, there is not a mention of civil unions. There's not a mention of civil unions for things such as allocation of property or for maintenance. There is a mention of civil unions relative to child support, but it's child support for children of the civil unions. It's hard for me to believe that the Illinois Marriage and Dissolution of Marriage Act legislators, when they were going through all these revisions and continue to go through all these revisions, if they intended for step-parents to include partners to a civil union, why didn't they say that when they mentioned civil union partners in other portions? Additionally, the Civil Union Act itself has been modified. I believe it was shortly after gay marriage was, pardon me, same-sex marriage, I apologize, it was legalized that there was an indication that you could take your civil union and convert it into a marriage if you wanted to. If you were in a civil union, it could then become a marriage. So even the Civil Union Act itself distinguishes between partners to a civil union and a married couple. Have I answered your question, Your Honor? I want to hear that again, this last section, that the Civil Union Act allows for – I believe that the Civil Union Act has a provision that if you want your civil union to be converted to a marriage, you can do that. Well, along the line of your statutory argument – Thank you. 602.93 defines a step-parent, and it says including a person married to the child's parent. Is it your argument that a civil union then cannot be a marriage? Marriage and civil unions are absolutely distinct. They are distinct, and I think that, I mean, first of all, we have the Illinois Marriage and Disillusionment Marriage Act, and we have the Civil Union Act. If they were one, let's make them one. The Civil Union Act itself allows civil unions to then become marriages at some point in time. So, yes, they are different. So what you're saying is if the legislature wanted to include a civil union in the definition of step-parent, there's a very convenient place for them to put it? Well, they could put it at the – I mean, I believe – In the definition of step-parent? They could do it there, or they could also do it – I mean, I believe the intro to the IMDMA says something to the effect that the purpose of this is to recognize, you know, and promote the solemnization of marriage. There's some language like that. I mean, I'm not trying to discredit the idea of somebody being in a civil union, but if you're in that – if you're in a civil union as opposed to a marriage, it doesn't mean that you get every single right that a married couple would have. I mean, I feel like this is almost a voting under a public policy decision. Well, I think that you're going to create a public policy decision. And you know what? I may. I mean, I think that the elephant in the room with this is that there's a public policy issue here. I mean, when I first was contacted – I mean, this client was my client when I initially did her divorce back in 2013, when they did the joint parenting agreement, which was really an equal 50-50 split of time. And frankly, when I first got contacted about this, I thought, well, what's the big deal? You know, Ms. Fulkerson, you know, has been in this child's life. What's the difference whether they're in a civil union or married? But you know what? That's not my place to decide. I'm not a legislator. And the Illinois legislature has gradually brought the IMDMA up to, I would say, more modern standards. I mean, we were one of three of the last states to actually do – to just go to no-fault divorce, you know, to add no-fault divorce. But I think that – I mean, if you look at – I mean, just look at the U.S. Supreme Court decisions regarding intruding on a parent's right to guide their child. I mean, I believe most of these are 14th Amendment cases. We have – what is it – 1972, Yoder v. Wisconsin. The state's not going to interfere with a parent's right to guide their child. Then we have Prince v. Massachusetts, where the state does interfere, but only if it's for the safety of the child. The legislators in Illinois have carved out very, very extreme, narrow exceptions when you intrude upon a parent's right to guide and make decisions for their child. If you're married and you get divorced and you can't figure things out on your own, you're essentially inviting the state into your living room, into your kitchen, to help you figure it out and to decide what's best for the child. But that's still between two parents who can't work it out. But before we bring in non-parents, grandparents, step-parents, the state has carved out narrow exceptions. And I don't think it's for us or for this Court to decide that because the Civil Union Act includes the term – it basically indicates that civil union partners are the same as spouses, that we extend or expand upon the language of the IMDMA to say that, okay, step-parent includes civil union partners. If we do that, essentially what we're saying is that the Civil Union Act trumps the language of the IMDMA. And this is something that the legislature should decide, not a court. I'm sorry. Additionally, I understand that it's tempting to sort of look at this and think that there's really – we're making too much of a big deal about this. It's really unfair to mis-focus them. But that's not really the standard we're looking at. I mean, if that's the case and if we are going to include a civil union partner, then why not say, okay, well, perhaps there was a nanny or a babysitter that essentially raised this child. Two parents got killed in a car accident. They get to come in and ask for custody under the IMDMA or say it was a situation – Yeah, but under those circumstances, I think it's a stretch because you do have a Civil Union Act that specifically mentions spouses as a sole inversion. It mentions spouses, but the Civil Union Act, if you look at the legislative history, there's nothing in there that indicates that the intent of this was to allow civil union partners to have sort of a long arm to have any rights or obligations, for that matter, to children of their civil union partner from another relationship, for lack of a better way to describe it. There's nothing in there. There's no cases where we have that. There's nothing in the legislative history. There's nothing in the Civil Union Act. Is there something in the language of the Civil Union Act that would preclude, as you put it, the long arm that would shorten that arm? The language of the statute. I'm not talking about the legislative history. I believe the language of the statute seems to imply that it's there for the civil union partners relative to their rights to one another. I mean, the act was enacted primarily. But that's not explicitly in the act. No, but you know what? You do have explicitly within the IMDNA a definition of step-parent. I'm not saying about the IMDNA. I'm talking about the Civil Union Act because you've got a situation, which I'm sure opposing counsel will address, where people get into the situation where you have the survivor of a civil union asserting rights that they claim they assumed because they were in a civil union, that they come into the IMDNA with a certain status. And if I understand opposing counsel's argument, that status includes that. Is that the same espoused because of the Civil Union Act? Your Honor, with all due respect, ignorance of the law is not a defense. Just because they think that they have the same coverage as you. No, I'm not saying whether they came in thinking that. I'm talking about the status that they get under the Civil Union Act going into the IMDNA. I don't care what the lay individual thinks their status is. I'm talking about the statutory status that they seem to have assumed from the language of the Civil Union Act. Whether they realize it or not is somewhat immaterial. Well, I guess what I would say to that is this. First of all, I think we're getting towards a public policy argument. And additionally, we're not interpreting the Civil Union Act. This is an IMDNA case. And really, I believe that there's a principle of what I think we call a constitutional avoidance. But it's the elephant in the room. I mean, obviously this case just has, you know, it's peppered with sort of interesting constitutional issues. You really don't need to get beyond the four corners of the IMDNA. It says a step-parent is somebody who is married to the parent, including a married immediately preceding that parent's death. You don't get to the modification provision or the interpretation provision that the Civil Union Act might lend to this. And even if you did, the Civil Union Act is not intended to give a partner rights to a partner's child from another relationship. And I think that the IMDNA addresses this and specifically includes Civil Union partners relative to children where it's intended to, meaning legitimizing children who are born of two partners for Civil Union and having the child support obligation in there. It doesn't say anything about Civil Union partners relative to property rights or relative to maintenance because it's assumed. And because the Civil Union Act's purpose really is, I mean, to a large degree, I mean, it was for elderly people who didn't want to get remarried because they didn't want to lose pension benefits that they might have had from a deceased prior spouse. I mean, clearly it would be there as a response to the time period when they were trying to pass same-sex marriage in Illinois but before it was passed because it was three years earlier. And it obviously would have the effect for people who don't want to enter into a marriage of avoiding a partition suit or an issue over maintenance because if you're in a Civil Union and you split up, I mean, sort of, I mean, the Hewitt and Blumenthal cases, those were property rights cases and cases where one partner, they weren't Civil Unions, one party of the couple, you know, was essentially supporting the other party making money, blah, blah, blah, and then suddenly you're gone and we don't have palimony so it was a way to try and... Go ahead. Sorry, to try and, you know, obviously obtain support, alimony, maintenance and also to divide up property. I mean, Blumenthal to some degree got decided on other grounds because the partner who wanted a share of what was probably the biggest asset couldn't do it anyway because it was a medical practice. Right. But it's really not the job, it's not my job and it's not the court's job to go beyond the four corners of the IMDMA which says married. Married. Thank you. Thank you, counsel. Counsel?  An amputee of the court. Thank you, counsel. Viviana August on behalf of the intervener at the league, Chris Fulkerson. I want to start with the Civil Union Act that defines party to a civil union. Civil Union Act states that a party to a civil union means and shall be included in any definition or use of the terms spouse, family, immediate family, dependent, next of kin, and any other terms that denote the spousal relationship as those terms are used throughout the law. I don't hear the word married. Your Honor, the legislature's decision to use the word married in defining a step-parent indicates that it intended to include civil union partners because the term married denotes a spousal relationship. And the Civil Union Act explicitly applies to any law that references or uses a term that denotes a spousal relationship. But had they used the word marriage in the Civil Union Act, it would have really destroyed the purpose of the act as far as what Ms. Scheer was arguing, and that is maintenance. The things that are included within the Illinois Marriage and Dissolution Act, I can't say it as fast as she does, but if they would have used the term marriage in the Civil Union Act, it would have defeated the purpose of the Civil Union Act. They could have easily put marriage in there, but they, meaning the legislature, chose specifically not to. The legislature chose specifically not to limit it to rights vis-à-vis married spouses with respect to one another. The Civil Union Act applies broadly by using terms such as spouse and family and immediate family dependent and so on, and for other terms that denote the spousal relationship as those terms are used throughout the law. And yet you can't get your spouse, as she was saying, you can't get your spouse's pension, for example. That's a way to avoid one party intervening into someone else's pension rights, and that is a matter of the law, and yet the Civil Union Act is used to avoid that issue. I mean, it's kind of like the Civil Union Act before same-sex marriage was kind of like a loophole that gets you out of certain things that you're obligated to under the Marriage Act, right? No, Your Honor. It doesn't get you out of any of the Marriage Act responsibilities? No, Your Honor. Children? In fact, Your Honor, the language of the Civil Union Act states that a party to a civil union is entitled to the same legal obligations and benefits, responsibilities, and protections afforded to spouses under Illinois law. Afforded to spouses under Illinois law. Yes, Your Honor. But it does, it seems to be that there's a gap here with the word marriage because, correct me if I'm wrong, but your case starts with the Illinois Marriage and Dissolution Act, correct? Yes, Your Honor. And the only way that you get standing is if you can somehow hold the definition of step-parent and somehow get that right of being a step-parent as defined in the Illinois Marriage and Dissolution Act by using the Civil Union Act. Yes, Your Honor. By relying on that. Yes, Your Honor. But it's clear the legislature could have done that because they did it in other parts of the Illinois Marriage Act, right? Well, Your Honor. So is that true? Yes, Your Honor, that's true. So here's my question. How do we as a court of appeals explain the failure of the legislature to include the Civil Union Act in this section regarding visitation? Your Honor, as the court is aware, there's a presumption that the legislature enacts laws with knowledge of prior enactments, and the definition of step-parent was added subsequent to the enactment of the Civil Union Act. The legislature thus knew that by using the term married and defining a step-parent, which denotes a spousal relationship, that the Civil Union Act would apply in that case. Wait, wait, wait. Are you saying that the term marriage under the law is equal to, in all respects, a civil union? Yes, Your Honor. I think the Civil Union Act makes that clear, Your Honor, by conferring all of the same benefits and responsibilities and obligations to civil union partners that are afforded to spouses under Illinois law. And is that what the judge indicated? The judge did indicate that by granting Ms. Fulkerson's petition for leave to intervene. He made that finding? He did say that civil union partners are equated to spouses under the Civil Union Act, yes, Your Honor, in a very brief hearing. I thought the order was a little lacking in the factual basis for his findings. It is a brief order, Your Honor, and he didn't discuss it at length. That's true. Okay. I'm sorry, I interrupted. No, thank you. It's a tendency, I guess. So, Your Honors, the language of the Civil Union Act is clear and unequivocal. Couples in a civil union are entitled to the same protections and benefits that are afforded to married couples under Illinois law. The Civil Union Act really drives this point home. It explicitly states that it shall be liberally construed to promote its underlying purposes, including to provide persons in a civil union with the same obligations, responsibilities, protections, and benefits afforded to be recognized by the law of Illinois to spouses. Okay. So let's suppose we could pass the step-parent issue. Okay. Did you argue the criteria that were required to be argued under the step-parent visitation statute? Under B4. 601.2B4? Yes, Your Honor. Those criteria under subsection B4 were alleged in Ms. Wilkerson's petition for allocation of parental responsibility. That's as far as you got. Yes, Your Honor. And the court had not reached the next step because of this appeal, Your Honor. So how old is this child? She's almost 12 years old. Okay. And you alleged that the child wished to live with Chris? Yes, Your Honor. Okay. How old was she at the time you filed the petition? She was, I believe she was eight or so, Your Honor. Okay. Eight. So she was seven when her father passed away, and that was when Ms. Westmoreland began to deny visitation to our client. And her father passed away in 2017. I'm sorry, she was 10. I'm sorry, Your Honor. She was 10 years old when her father passed away. Okay, so she was 10. Yes. Okay. As Your Honor mentioned earlier, the Illinois Supreme Court has made clear that the best indication of legislative intent is the language of the statute. And when that language is unambiguous, as the Civil Union Act is here, the statute must be applied as written. So, Your Honors, although we don't reach the issue of legislative history because the language is clear, the legislative history also forecloses Ms. Westmoreland's argument. The act's legislative history demonstrates the legislature's intent to entitle partners to a civil union to all of the benefits afforded to spouses under Illinois law, including the Marriage Act. Okay, so we have, as I understand this, we have three issues before this Court that need to be decided. Two are certified questions under Rule 308, right? Yes, Your Honor. And the third one has to do with, I think, the order on standing. Is that true or not? Correct me if I'm wrong, because I'd like to understand what the Court's going to rule on. I know the two certified questions. The Court's ruling on the two certified questions, which are resolved by the same issue, would also resolve the issue of standing in this case. Ms. Westmoreland has objected to Ms. Fulkerson's petition for Lee to intervene on the basis that she's not a step-parent. So if the Court rules that she is or is not a step-parent, that would resolve the question of standing. But Judge Mangarelli also entered an order in conjunction or actually before, I think, the 308s. 308 questions. Is that wrong or right? I don't believe he did, Your Honor. As soon as he ruled on the issue of standing, granted Ms. Fulkerson's petition for Lee to intervene in the dissolution of marriage proceeding, Ms. Westmoreland sought a stay as she sought to certify the questions for Lee to appeal. So the Court didn't get past the issue of standing in this case. Okay. So if I understand this right, the first question has to do with standing to request visitation, which is a term not used under the present Illinois Marriage and Dissolution Act, I don't think. But I don't – I think it's called parenting time. Your Honor, there's section 5602.9. 602.9A3. Yes, Your Honor. And NC, which permits visitation by step-parents. Okay. 602.9. I'm just looking at the certified question because I see the certified questions are very, very similar. 602.9A3, which merely defines visitation. Right, Your Honor, and step-parents. And Ms. Fulkerson sought visitation under 602.9C. Okay. But that, again, that goes beyond the question of statutory standing in this case. The circuit court was prepared to address that section of the statute after he granted Ms. Fulkerson's petition for Lee to intervene. Okay, go ahead. And, Your Honor, just to clarify, both certified questions are resolved by the same question of whether Ms. Fulkerson is a step-parent under Illinois law because both subsections define, or both sections, rather, define step-parent the same. So, again, Your Honors, the transcripts make clear that the legislature sought to extend the same legal obligations, responsibilities, protections, and benefits as are afforded to spouses under the Marriage Act. And rendering a party to a civil union a step-parent to his or her partner's child advances this legislative intent. Earlier, Ms. Westmoreland's counsel referred to the presumption or the court's presumption that a biological parent or a natural parent is fit to decide, make decisions on behalf of his or her child. And these general principles are not relevant at this stage of the proceedings. This appeal is limited to the narrow question of whether Ms. Fulkerson has statutory standing in this case to even show the court that she's entitled to visitation and allocation of these rights. Ms. Fulkerson is simply asking this court for an opportunity to show the circuit court that she is entitled to visitation and allocation of parental responsibilities. By virtue of the Civil Union Act, the Marriage Act grants her that opportunity as the circuit court found. This court should affirm that decision. And, Your Honors, if there are no further questions. I don't believe there are. Thank you, Counsel. Thank you. Counsel? Thank you, Your Honors. I find it interesting that counsel for Chris Fulkerson, of course, starts off with the Civil Union Act. Again, this case is not about the Civil Union Act. It's about the Illinois Marriage and Dissolution of Marriage Act. You had also asked her the question as to whether or not Judge Mingorelli made a finding that the language of the Civil Union Act was the reason that Chris Fulkerson had standing. If you look at, it's essentially an appendix which became the common law record because of the procedure regarding this being an interlocutory appeal. If you look at A19, you will see that there is no finding made. And I might also add that this order was not. If there's no finding, why are we here? I apologize. Let me be. I apologize. Very good question. I believe the question was, was there a finding made that because of the language of the Civil Union Act that she was a step-parent. I apologize. I shouldn't. No, that's okay. I'm trying to get everything in in five minutes. This order was drafted by Ms. Fulkerson's then counsel, Alana Mejia, other than the portion where it says case set status. It just indicates that it was called and heard, that both parties are there with counsel, arguments heard, petition for leave to intervene granted. Absolutely no finding. It was signed off. Well, that's an interesting issue because we have been directed by the Supreme Court to not decide cases basically that are advisory, and that there has to be a final judgment that is determinative that we are then deciding. But on July, I believe it was July 18th of 17, an order was entered by Judge Mangarelli that certified two questions for interlocutory appeal. But that doesn't answer the question of him making actually a final judgment that then there is a question derived from. I can make that. It's actually not even a question to you. No, I didn't say that. The Supreme Court has come down, and I can't remember the case right now, but we're not to give essentially advisory opinions which would be what we would be doing if we just answered these questions without the court saying we find that there was standing. I'm looking at the April 3rd, 17 order, and I know you have it because it was attached to my. Let me ask you this, and that's one of the reasons I thought there was another order is exactly what Justice Chapman is referring to. In order to have a 308, we have to have something other than just granted that tells us or gives us some direction on what we're doing, such as your argument here. Well, I think that the – I'm sorry, I didn't mean to interrupt you. Go ahead. Tell us about the subsequent order you wanted to talk about. We're going to ask this of other counsel. No, that's okay. I mean, on April 3rd, there was the order that I just mentioned, no finding. On April 20th, I filed a motion to certify and for stay, and I believe that Ilana Mejia filed an objection, I don't know, early May. Okay. What does the court order say? Granting the certified question. Give me one second. That's fine. It was on July 18th of 17th. I will read it. Cause called on my motion, on Crystal's motion to certify question of law for interlocutory appeal. Parties appeared by counsel, court having heard argument, orders as follows. One, that respondent, Crystal, filed a motion to certify question of law for interlocutory appeal and for stay of trial proceedings April 20th of 17th. Two, that this matter involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Which is basically the language that has to be put in, correct? Yes. The rule language. And then number three, it says that the respondent, my client's motion, to certify question of law for interlocutory appeal and for stay of trial proceedings is granted. Four, that the following questions are certified for interlocutory appeal. And then there's A and B, and it's about step-parent. And then number five, it says proceeding stated to Chris Fulkerson and then clerk to send copies. So it appears that this is an issue on standing. There's nothing more here. No. It's an issue on standing. Absolutely. That is the narrow issue. Absolutely on standing. Whether or not she is standing, because she isn't a step-parent. And the court's action allowing intervention resolves the issue of standing and is now the basis of the two certified questions. Is that correct? I would say so. The court, I think, agreed that there was room for dispute. It's implicit in the ruling that there could be intervention. Yeah. Yeah. My problem with the certified questions is the 601B4 is one of the questions. And it seems to me that we have two step-parent issues. One is marriage, but two is the petition has to allege in order to file it as a step-parent. You have to allege all of these four things, A, B, C, D, four things. This kind of brings up something you mentioned before when you were speaking to opposing cases. May I finish? Yeah, go ahead. You made a comment. You said something to the effect of, well, we don't even have visitation anymore. We have parental allocation of time and responsibilities, but the IMDMA still has visitation for non-parents. I see that now. Which would be a step-parent or a grandparent. So I apologize. No, no. That was my fault. I have another case on. Don't apologize. I make this mistake almost every day in my office. I have that visitation section in my office. We are all using the EULA plan, which I absolutely. Yeah. But we do have two issues here on standing. Right. To resolve. We didn't get, I mean, I know what you're referring to. We didn't get to the other issues regarding the pleading or whether or not. Well, the only reason I think that we have it is because it's in the certified question. Correct. The citation to the statute is in the certified question. Right. And so we're. Can I answer a question that Judge Goldenhersch had mentioned? I would appreciate it. Go ahead. Sure. You asked me before, and I believe it was addressed by opposing counsel about the Civil Union Act, you know, spousal relationships, wouldn't it include this? It really doesn't because the spousal relationships that are mentioned in the Civil Union Act have to do with the relationships to one another. They talk about the spousal relationship. It's a relationship between the two Civil Union partners, not between the two Civil Union partners reaching into the relationships. But the language of the statute does not limit itself so that it does not cover the survivor of a Civil Union relationship. The language of the statute is awfully broad. I would not disagree with you on that, but if it's a survivor, then it has to do with rights relative to the survivor, not necessarily to reach into the relationship that the survivor may have had with a former wife or a former spouse or partner and their children. I mean, I guess the flip side would be this. Does my client now have the right to sue Chris Fulkerson for child support? That's an interesting question. Thank you. If a married spouse would have that right, the language is broad enough in the Civil Union Act where that could possibly be the answer in the affirmative. I don't think it is because I don't think that that is the intent of it. I really think that the Civil Union Act is for spouses' rights relative to one another. But, again, we're not here over the Civil Union Act. We're here over the Illinois Marriage and Dissolution of Marriage Act. Let me ask one more question. Sure. If I could. Of course. I asked a person counsel if the Marriage Act was the same as the Civil Union Act as relating to the rights of the individuals.  Do you disagree with that? I absolutely disagree with that. Why? Well, because the Illinois Marriage and Dissolution of Marriage Act has carved out specific situations where it extends to Civil Union partners and it only has to do with rights relative to children. And there are portions of the Illinois Marriage and Dissolution of Marriage Act where they don't include partners to a Civil Union Act but that do address children. You keep calling it the Marriage Act. The IMDMA doesn't talk about Civil Union partners relative to property rights or maintenance because it doesn't need to because the Civil Union Act is there for rights of spouses relative to one another, property rights, support rights to one another if the Civil Union ends. But, no, if it was intended to be the same, then make it the same. With all the revisions they've done to the IMDMA, why not call it the Illinois Marriage and Civil Union and Dissolution of Marriage and Civil Union Act? And why is it that... It's a mouthful. That's what I was going to say. I might have just as cases Marriage Act. I think we're going to start using that. But why does the Civil Union Act now allow civil unions to be converted into marriages? Why? Because there is a difference between a marriage and a civil union. And if there's not, then get rid of the Civil Union Act and just have marriages. Okay. Thank you, Counsel. Thank you. It's an interesting case. We'll take it under advisement. Thank you. Briefs and arguments, all parties. Court will be in recess until 2 o'clock.